Jane M. Imholte
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
188 W. Northern Lights Blvd., Suite 700
Anchorage, Alaska 99503
Phone: (907) 646-3400
Fax: (907) 646-3480
Email: jane_imholte@fd.org

*Counsel for Defendant Jason Travis Gray*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JASON TRAVIS GRAY,<br><br>Defendant. | Case No. 3:23-cr-00008-JMK-MMS<br><br>**SENTENCING MEMORANDUM** |

Mr. Gray requests a sentence of five years, or 60 months, followed by a ten (10) year term of supervised release. Congress prescribed a mandatory minimum five (5) year sentence for this offense. 18 U.S.C. § 2252(a)(2). The advisory guideline range is 210 to 240 months. This range caps at the statutory maximum on a single count, and a sentence within the guideline range grossly overstates the danger Mr. Gray poses to the public. A five (5) year sentence, followed by a ten (10) year term of supervised release, is sufficient but not greater than necessary to achieve the sentencing goals embodied in 18 U.S.C. § 3553(a). The proposed sentence reflects the seriousness of Mr. Gray's offense, protects the community from future similar conduct by Mr. Gray, and provides for his rehabilitation and reintegration into his community.

## I.     INTRODUCTION

On February 17, 2013, the United States Sentencing Commission submitted to Congress

a comprehensive report examining federal sentencing policy in Child Pornography cases.[1] Among its findings, the Commission announced that prison sentences for defendants convicted of federal child pornography offenses have almost doubled in the past decade, due in large part to penalty enhancements in U.S.S.G. § 2G2.2 that now apply to most offenders, and thus fail to differentiate among them in terms of their culpability. *See* Chapter 8 at 209.[2] At the same time, rates of within guidelines sentences in child pornography cases have dropped markedly: In the year before *Booker*, the within-guideline rate was almost 80%. After *Kimbrough*, the rate dropped to 41%, and in fiscal year 2011 dropped further still to less than 33%." Melissa Hamilton, SENTENCING POLICY ADJUDICATION AND EMPIRICISM, Ga. St. U.L. Rev. at 7 (forthcoming) (quoting United States Sentencing Commission, Report on the Continuing Impact of *United States v. Booker* on Federal Sentencing A73 (2012).[3] These sentences indicate that a growing number of courts view the current sentencing scheme as overly severe for certain offenders.

## II. GUIDELINE LEVEL

The defense agrees technically with the guideline computations in the Presentence Report [PSR at Dckt. 51]. The total offense level after acceptance of responsibility is 37. Mr.

---

[1] The 26-page executive summary can be accessed at:
http://www.ussc.gov/Legislative_and_Public_Affairs/Congressional_Testimony_and_Reports/Sex_Offense_Topics/201212_Federal_Child_Pornography_Offenses/Executive_Summary.pdf.

[2] Full text available at:
http://www.ussc.gov/Legislative_and_Public_Affairs/Congressional_Testimony_and_Reports/Sex_Offense_Topics/201212_Federal_Child_Pornography_Offenses/index.cfm.

[3] Full text available at: http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2232936.

Gray is a first-time offender in Category 1, so his advisory guideline range is 210 to 240 months.[4]

This range suggests an astounding sentence for a first-time offender who has never touched a child. In fact, a court might well describe such a sentence as "draconian," "unconscionably harsh," and yielding "unjust and sometimes bizarre results." *See*, e.g., *United States v. Grober*, 624 F.3d 592, 596 (3rd Cir. 2010); *United States v. Overmyer*, 663 F.3d 862,867 (6th Cir.2011) (Merritt, dissenting); *United States v. Gray*, 649 F. 3d 955, 964 (9th Cir.2011)(Berzon, concurring).

### III. THE SENTENCING GUIDELINES RANGE IN THIS CASE DESERVES LESS RESPECT BECAUSE IT WAS NOT THE RESULT OF THE SENTENCING COMMISSION'S PARTICULAR EXPERTISE

The undisputed guideline in this case is 210 to 240 months. In this instance, the advisory range is entitled to less deference in part because it was not the product of the Sentencing Commission's particularized institutional expertise.

#### A. This Guideline is Advisory Only

In *United States v. Booker*, 543 U.S. 220, (2005), the Supreme Court declared the

---

[4] In 2009, the Sentencing Commission noted that in downloading cases, 94.8 percent of cases involved images of prepubescent minors; 97.2 percent involved a computer; 73.4 percent involved an image of sadistic, masochistic, or otherwise violent conduct; and 63.1 percent involved 600 or more images. *United States v. Dorvee*, 616 F.3d 174, 186, citing United States Sentencing Commission, Use of Guidelines and Specific Offense Characteristics for FISCAL YEAR 2009. In 2009, 96.6 percent of offenders sentenced under § 2G2.2 received an enhancement based on the number of images possessed. *United States v. Tutty*, 612 F.3d 128, 132 (2ᵈ Cir. 2010). Without the enhancements, Mr. Gray=s offense level would be 22, for a sentence after acceptance of 30 to 37 months, with a statutory minimum of 60 months.

Federal Sentencing Guidelines advisory to avoid the Sixth Amendment error inherent in the federal sentencing scheme. Each time the Supreme Court has returned to the *Booker* remedial opinion, it has embraced its central holding. *Kimbrough v. United States*, 128 S. Ct. 558, 564 (2007) (Booker Ainstructed district courts to read the United States Sentencing Guidelines as "effectively advisory"; *Spears v. United States*, 129 S. Ct. 840, 842 (2009) (per curiam) ("cocaine Guidelines, like all other Guidelines, are advisory only."); *Nelson v. United States*, 129 S. Ct. 890, 892 (2009) (per curiam) ("The Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable.").

Apart from the fact that, in this instance, the advisory guideline factor is outweighed by the other § 3553(a) factors, the applicable guideline is entitled to less deference because it was not the product of the Sentencing Commission's particularized institutional role. This is a case where a substantial variance from the Guidelines is both appropriate and justified. Mr. Gray should be sentenced in the range of similar cases in this district.

    **B.    How the Sentencing Commission is supposed to establish sentencing guidelines**

Title 18 U.S.C. § 3553(a) identifies the factors that must be considered as part of the sentencing process. Congress established the United States Sentencing Commission to formulate sentencing guidelines that reflect the § 3533(a) factors from a national perspective. *Kimbrough v. United States*, 128 S. Ct. at 574, *Rita v. United States*, 127 S. Ct. 2456, 2464 (2007). Ordinarily, the Sentencing Commission brings an expertise to the sentencing process that courts lack. That expertise is the capacity to "base its determinations on empirical data and national experience, guided by a professional staff." *Kimbrough v. United States*, 128 S. Ct. at 574 (quoting *United States v. Pruitt*, 502 F.3d 1154, 1172 (10th Cir. 2007) (McConnell,

J., concurring); *see also, Gall v. United States*, 128 S. Ct. 586, 594 (2007) (noting that 'even though the Guidelines are advisory rather than mandatory, they are … the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions.").

Ordinarily, the Sentencing Commission formulates the sentencing guidelines after developing empirical data grounded in past practices and research into recidivism rates. *See* United States Sentencing Commission, Fifteen Years of Guidelines Study (November 2004) at 14; U.S.S.G. § 1A1, intro. comment, pt. A, & 3; *Kimbrough v. United States*, 128 S. Ct. at 567. Using these statistics, the Sentencing Commission establishes offense levels for each crime and then links that offense level to a particular recommended imprisonment range. *Id.* at 14. When developed in this fashion, the resulting advisory Guidelines range was thought to represent a reasonable sentencing range that fairly addressed the § 3553(a) factors from a national perspective. *Kimbrough v. United States*, 128 S. Ct. at 574-75.

Because of the institutional flaws in the promulgation of U.S.S.G. § 2G2.2, courts are now routinely giving it less deference than to other guidelines that were based on past practices and Sentencing Commission institutional expertise. *See*, e.g., *United States v. Hanson*, 561 F. Supp. 2d 1004,1009 (E.D. Wis. 2008) ("[G]uideline 2G2.2 is not representative of the Commissions typical role or of empirical study … [t]he guideline has been increased despite evidence and recommendations by the Commission to the contrary."); *United States v. Shipley*, 560 F. Supp. 2d 739, 744 (S.D. Iowa 2008) ("These modifications do not appear to be based on any sort of empirical data, and the Court has been unable to locate any particular rationale for them beyond the general revulsion that is associated with child exploitation offenses.").

The Ninth Circuit has expressly acknowledged that the child pornography guideline has numerous flaws and qualifies as a matter of law for a policy-based rejection. *United States v. Gray*, 649 F.3d 955, 963 (9th Cir. 2011). Because the guidelines were based on Congressional agendas rather than the Commission's own independent study, sentencing courts have the ability to deviate from them on policy grounds. *Id*. at 960. The Ninth Circuit, e.g., affirmed a five-year probationary sentence for a defendant who confronted an advisory guideline range of 41 to 51 months following his conviction for possession child pornography. *United States v. Autrey*, 555 F.3d 964, 867 (9th Cir. 2009). Autrey was a former reserve police officer who was found with 150 images of child pornography on his computer after he attempted to order additional contraband images.

The district court recognized that child pornography was "terrible stuff "and believed the defendant ordered child pornography knowing that it was "wrong and illegal." *Id*. at 868. However, the court found no evidence that Autrey ever abused family members and did not fit the profile of a pedophile seen in other cases. *Id*. The court also noted that Autrey had no history of substance abuse, no interpersonal instability, and no sociopathic or criminalistic attitudes. *Id*. The court thought it important that he had the continuing support of his family. The court believed, under the totality of the circumstances, a sentence of imprisonment would be much more disruptive and more damaging to Autrey's rehabilitation. *Id*. at 868.

The district court imposed a probationary sentence, and the Ninth Circuit affirmed the result. Many of the same characteristics to which the Court assigned great weight in Autrey are present in this case as well: Mr. Gray has never touched a child, has no history of substance abuse or instability, and has the continuing support of his family.

## III. 18 U.S.C. § 3553(a) ANALYSIS

### A. The Nature and Circumstances of the Offense

Clearly, the distribution of child pornography is a very serious offense. It is one of numerous offenses which involves commercial sex acts and the abominable notion of sexual exploitation of minors. Criminalizing such acts as possession of child pornography reemphasizes the importance of destroying any market intending to exploit children. *See United States v. Rugh*, 968 F.2d 750, 756 (8th Cir. 1992). While distribution of pornography is a serious offense, within the class of sex crimes involving exploitation of children, it is considered to be somewhat less culpable than the heinous offense of production of child pornography, much less those crimes involving actual physical contact or abduction. There is no suggestion that Mr. Gray was involved in the actual production of child pornography or that he had sexually abused children in the past. Indeed, Mr. Gray conceded that his conduct was shameful and that he knew it was wrong. He is extremely remorseful.

Mr. Gray, like many others who have accessed child pornography via their computers, did not have the initial appreciation of the magnitude of the offense he was committing: "The manner in which computer technology and high speed internet access have made

> such material readily accessible in the presumed privacy of the home has removed several substantial impediments to seeking out such material that previously existed. No longer must a person travel to the seedy side of town, walk into a dirty book store, make a request for the sordid material to another person from whom one's identity could not be readily concealed, and pay for it. The easy availability of the material at no cost with the click of a mouse…leaves little but one's natural aversion to depiction of the abuse and degradation of children to stand in the way of obtaining it.

> ...
>
> A further fact seems to be the lack of appreciation of the harm that simply viewing such material does to children. In some respects, the internet seems analogous to a huge file cabinet containing an almost limitless number of documents and other forms of information. Under this view, accessing child pornography can be rationalized as simply pulling out a drawer and looking at a photo that someone else took in the past. As long as the individual who accesses the pornography is not himself abusing children to produce it, selling it in order to profit from it, or paying for it so as to stimulate demand for it, he can tell himself that he has done no harm to the children depicted."

*United States v. Ontiveros*, 2008 WL 2937539 (E.D. Wis.2008).

As addressed in *Ontiveros*, though the above factors do not excuse the behavior, they do suggest an explanation for why people such as Mr. Gray, who at 27 has no prior criminal history, commit such offenses. Once they realize that such conduct does substantial harm to children, many offenders are unlikely to repeat their actions.

### B. Jason Gray's History and Characteristics

Mr. Gray is 27 years old. This conviction represents his first contact with the criminal justice system. Mr. Gray entered the Air Force in 2015. He was deployed to Afghanistan and flew 86 combat missions with over 430 hours of flight time. Like many combat veterans, Mr. Gray came back home a changed man. He struggled with PTSD and with the military to find proper care for same. He spiraled into a pornography addiction not uncommon among veterans.[5] That addiction lead him into the darkest corners of the online pornography realm: child pornography.

---

[5] *See, e.g.,* "Military Veterans' Psychological Distress Associated with Problematic Pornography Viewing," Borgogna, et.al. Int'l Journal of Mental Health and Addiction. August, 2002. https://doi.org/10.1007/s11469-021-00508-z

Since the filing of the charges, Mr. Gray has been on a quest of self-examination and atonement. He has lost his marriage, his livelihood, and his moorings. However, Mr. Gray has refused to give up. Bored at the half-way house, Mr. Gray sought permission to volunteer at Bean's Café, a position that quickly transformed into full-time employment. Mr. Gray is one of Bean's Café's most highly valued employees. In addition to scrupulous job performance, Mr. Bean has opened up to staff about his offense, taking full responsibility for his actions. Mr. Bean has also been meeting regularly with a counselor who commends him for his honesty and willingness to confront his demons head-on.

As set forth in the many letters from Mr. Gray's friends and family, he has a strong network of support who love and respect him. His aunt and uncle in Virginia are willing to take him in after his prison sentence until he gets back on his feet. His mother, though devastated by these charges, is a steady source of unconditional support.

All of Mr. Gray's pornography was acquired and distributed electronically over the internet. Mr. Gray personifies in all respects the end-user who developed an acute addiction to child pornography. Although Mr. Gray did share pictures by virtue of the peer-to-peer program that he used, his crime is primarily that of possession; a person who in all respects was an addicted end-user of child pornography. Most importantly, Mr. Gray has never directly or purposely harmed a child and he has never attempted to harm any child. Mr. Gray is not a realistic threat to children

.

1.  **Mr. Gray has a strong community based support structure**

It is noteworthy that Mr. Gray has a significant community based support structure already in place, which remains willing and able to assist in his rehabilitation in a variety of ways. First, he comes from a supportive family. (*See* letters of support at Exhibit D-1). Second, the family has a realistic appreciation for the nature of Mr. Gray's offense; they ask only for some proportionality in the sentence that will enable them to meaningfully provide for his reintegration into the community. This support network, despite being shocked and dismayed by the allegations, remains committed to assisting in his rehabilitation and reintegration into the community. This is a resource the court should not to ignore when it fashions the sentence.

> **2. Mr. Gray has already demonstrated his ability to comply with conditions of supervision and those conditions can protect the public from further crimes**

Mr. Gray has already demonstrated his ability to comply with conditions of supervision. He was cooperative with the investigation and consented to an interview. He admitted to possessing child pornography. He was allowed to remain in the community, advised law enforcement of his whereabouts, and remained in the community for over a year with no incidents of misconduct.

> **3. Mr. Gray has a demonstrated ability to be a productive member of the community**

Mr. Gray has a demonstrated ability to be a productive member of the community. His work history demonstrates steady employment with steadily increasing wages and responsibilities. Although Mr. Gray's future employability and earning potential will be severely hampered by increasingly draconian sexual offender registration laws, he has demonstrated that he can be a productive member of the community.

C. **Restitution**

The defense acknowledges that there are nine identified victims claiming restitution in this case and that restitution is a matter within the Court's discretion. Mr. Gray requests that the court order the minimum required amount of $3000.00 for each victim, for a total of $27,000.00.

D. **A sentence of five years followed by a 10-year term of supervised release is represents just, appropriate, and severe punishment for Mr. Gray, will deter him from future misconduct, and will promote respect for the law**

Congress established a mandatory minimum sentence of five (5) years for child pornography distribution cases. 18 U.S.C. § 2252(b)(1). Mr. Gray respectfully submits that, in this case, a sentence of five (5) years represents a fair and just sentence under the totality of the circumstances. It represents a serious loss of liberty and a significant term of supervision following release. Mr. Gray had never spent a night in jail prior to this offense. Any potential jail sentence is not a slap on the wrist for someone who has never spent a day in jail, has no history of violent or assaultive conduct, had discontinued the criminal conduct prior to contact with law enforcement, and voluntarily submitted to being interviewed by law enforcement. Second, the proposed sentence provides sufficient tools that will allow the Court and the probation service to protect the public from additional misconduct by Mr. Gray. And, finally, such a sentence will readily promote respect for law.

Mr. Gray has already been deterred from future misconduct. In that regard, he has already demonstrated his amenability to supervision and to law abiding behavior. Mr. Gray spent just a few days in jail after his arrest, and then was released into the community with several pretrial conditions. Mr. Gray has remained in the community, working, attending counseling,

and complying with state and federal laws for over a year before the sentencing in this matter. Under these circumstances, Mr. Gray suggests that he has been deterred and that he is more amenable to supervision than most offenders.

Mr. Gray will be required to register as a sex offender, which registration makes no distinction between whether the offender actually committed a sexual assault or simply possessed child pornography. The shameful label will follow him for the rest of his life and will substantially limit where he will be able to live and work.

## IV. CONCLUSION

At sentencing, the court will be asked to balance the factors Congress listed in 18 U.S.C. § 3553(a). One of those factors will be the recommended guideline range established by U.S.S.G. § 2G2.2. Mr. Gray respectfully submits that *Kimbrough*, *Gall*, and *Rita* do not permit this Court to assign any significant weight to the recommended range derived from § 2G2.2. This is because the recommended range does not reflect the United States Sentencing Commission's particularized expertise. In the alternative, the court should concentrate on the factors listed in § 3553(a). A review of those factors suggest that a sentence of 60 months, followed by ten (10) years of supervised release, is sufficient, but not great than necessary, to satisfy the federal sentencing goals.

DATED at Anchorage, Alaska this 22nd day of November, 2023.

Respectfully submitted,
FEDERAL PUBLIC DEFENDER
DISTRICT OF ALASKA
*/s/ Jane M. Imholte*

Jane M. Imholte
Assistant Federal Defender

<u>Certificate of Service</u>:
I hereby certify that I electronically filed the foregoing and any attachments with the Clerk of Court for the United States District Court for the District of Alaska by using the district's CM/ECF system on November 22, 2023. All participants in this case are registered CM/ECF users and will be served by the district's CM/ECF system.
*/s/ Jane M. Imholte*